Citation Nr: 1214067 
Decision Date: 04/17/12 Archive Date: 04/27/12

DOCKET NO. 05-24 934 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs (VA) Regional Office (RO) 
in St. Louis, Missouri


THE ISSUES

1. Entitlement to service connection for claimed hypertension, to include as secondary to the service-connected diabetes mellitus.

2. Entitlement to service connection for claimed visual problems, to include as secondary to service-connected diabetes mellitus.


REPRESENTATION

Appellant represented by: The American Legion


ATTORNEY FOR THE BOARD

D. Bredehorst



INTRODUCTION

The Veteran served on active duty from June 1970 to January 1972.

These matters come before the Board of Veterans' Appeals (Board) on appeal from an April 2005 rating decision of the RO.

The Veteran requested a hearing with the Board, but later withdrew his request in February 2007.

In September 2010, the Board remanded the matter to the RO for additional development.

The Veteran also appealed the denial of service connection for posttraumatic stress disorder (PTSD); however, the RO in a January 2012 rating decision granted service connection for PTSD. 

The issue of service connection for hypertension is being remanded to the RO via the Appeals Management Center (AMC), in Washington, DC. VA will notify the Veteran if further action is required on his part. 



FINDINGS OF FACT

1. The Veteran is not shown to have manifested complaints or findings referable to an acquired eye disorder in service or for many years thereafter. 

2. The currently demonstrated acquired eye pathology, including uveitis, is not shown to be due to an event or incident of the Veteran's period of active service or to have been caused or aggravated by the service-connected diabetes mellitus. 



CONCLUSION OF LAW

The Veteran does not have an acquired eye disability due to disease or injury that was incurred or aggravated by active service; nor is any proximately due to or the result of the service-connected diabetes mellitus. 38 U.S.C.A. §§ 1101, 1110, 1112, 1113, 5103(a), 5107 (West 2002); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309, 3.310 (2011). 


REASONS AND BASES FOR FINDING AND CONCLUSION

Duties to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA), in part, describes VA's duties to notify and assist claimants in substantiating a claim for VA benefits. See 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126 (West 2002); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2011). 

VCAA applies to the instant claim. Upon receipt of a complete or substantially complete application for benefits, VA is required to notify the claimant of any information, and any medical or lay evidence, that is necessary to substantiate the claim. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b); Quartuccio v. Principi, 16 Vet. App. 183 (2002). 

Proper VCAA notice must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. 38 C.F.R. § 3.159(b) (1) (including as amended effective May 30, 2008, 73 Fed. Reg. 23353 (Apr. 30, 2008)). 

The VCAA notice should be provided to a claimant before the initial unfavorable agency of original jurisdiction decision on a claim. Pelegrini v. Principi, 18 Vet. App. 112 (2004). 

In Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006), the U.S. Court of Appeals for Veterans Claims (Court) held that the notice requirements of VCAA applied to all 5 elements of a service connection claim (i.e., to include the rating assigned and the effective date of award). 

The January 2005 and March 2006 letters provided the Veteran with notice of VA's duties to notify and assist him in the development of his claim consistent with the law and regulations outlined hereinabove. 

In this regard, these letters informed him of the evidence and information necessary to substantiate his claim, the information required of her to enable VA to obtain evidence in support of his claim, and the assistance that VA would provide to obtain information and evidence in support of his claim. He was also given notice regarding disability ratings and effective dates of awards. 

The Board also finds that VA has made reasonable efforts to assist the Veteran in obtaining evidence necessary to substantiate his claims. 38 U.S.C.A. § 5103A (West 2002). 

The Veteran's service treatment records are associated with his claims file, and VA has obtained all pertinent/identified records that could be obtained and development requested in the Board's September 2010 remand were completed. 

The Veteran was also afforded a VA examination that is adequate for adjudication purposes. See Barr v. Nicholson, 21. Vet. App. 303 (2007); see Stefl v. Nicholson, 21 Vet. App. 120, 123 (2007). VA's duty to assist is met.


Legal Criteria

Service connection may be established for a disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C.A. §§ 1110, 1131; 38 C.F.R. § 3.303. 

The regulations also provide that service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disability was incurred in service. 38 C.F.R. § 3.303(d). 

Evidence of continuity of symptomatology from the time of service until the present is required where the chronicity of a condition manifested during service either has not been established or might reasonably be questioned. 38 C.F.R. § 3.303(b). 

In order to prevail on the issue of service connection there must be medical evidence of a current disability; medical evidence, or in certain circumstances, lay evidence of in-service occurrence or aggravation of a disease or injury; and medical evidence of a nexus between an in-service injury or disease and the current disability. See Hickson v. West, 12 Vet. App. 247, 253 (1999); see also Pond v. West, 12 Vet. App. 341, 346 (1999).

Service connection may be established on a secondary basis for a disability that is proximately due to, the result of, or aggravated by a service-connected disease or injury. 38 C.F.R. § 3.310(a); see also Allen v. Brown, 7 Vet. App. 439 (1995) (en banc). 

Briefly, the threshold legal requirements for a successful secondary service connection claim are: (1) Evidence of a current disability for which secondary service connection is sought; (2) a disability which is service-connected; and (3) competent evidence of a nexus between the two.


Analysis

The Veteran is not shown to have manifested complaints or findings of an eye disorder, to include uveitis, in service or for many years thereafter. His service treatment records show that all eye examinations were normal.

The medical evidence shows that an eye disorder was initially identified in April 2004. At that time, the Veteran reported having a 15 year history of variations in his vision and having a left eye that became red and sore. He also had photophobia; the right eye only had occasional problems. The diagnosis was that of unilateral pan-uveitis with non-granulomatous and granulomatous characteristics. There was no evidence of diabetic retinopathy.

A September 2004 neurological consultation noted that the cause of the Veteran's uveitis was uncertain and that he had a reported history of venereal disease in service. The impression was that syphilis, based on the Veteran's previous history, is a possibility.

In November 2010, the Veteran was afforded a VA examination to determine whether the claimed eye disability was related to his period of active service. He reported having several eye symptoms and diagnoses of refractive error, presbyopia, uveitis with recurrences, immature mixed cataracts, and a prior history of allergic conjunctivitis. There was no evidence of diabetic retinopathy in either eye.

The VA examiner stated that the most likely etiology of the Veteran's description of ocular redness and irritation was mild blepharitis, poor tear quality and dry eye. Regarding uveitis, since the systemic work-up did not reveal an etiology, it was thought to be idiopathic. 

The physician also commented that diabetes mellitus was not known to cause or aggravate anterior uveitis. The immature mixed cataracts in both eyes were not visually significant and were opined to be age-related and not caused or aggravated by diabetes mellitus. 

Overall, the physician's opinion was that the review of the medical record did not reveal any diagnosed eye disability that was caused or aggravated by the service-connected diabetes mellitus.

On this record, the Board finds that the preponderance of the evidence is against finding that any currently diagnosed eye disorder is related to an event or incident of his active service. 

Although a treatment record suggested that the Veteran's history of venereal disease in service was a possible cause of uveitis, a review of the service treatment records shows that he was diagnosed with and treated for gonorrhea during service rather than syphilis. Thus, on this record, there is no factual basis to causally link any claimed eye disorder to a particular sexually transmitted disease treated in service. 

Furthermore, there was no evidence of an eye disorder in service or for many years thereafter. The passage of many years between separation from active service and the objective documentation of a claimed disability is a factor that weighs against a claim for service connection. See Maxson v. Gober, 230 F.3d 1330, 1333 (Fed. Cir. 2000).

As for whether the Veteran has an eye disorder that was caused or aggravated by the service connected diabetes mellitus, the evidence also weighs against the claim. 

In this regard, the VA examiner essentially found no factual basis to relate the onset of any acquired eye disorder to the service-connected diabetes mellitus on the basis of either incurrence or aggravation. He noted in particular that uveitis was not known to be caused or aggravated by diabetes mellitus.

In short, the evidence does not serve to establish that any current acquired eye disorder is related to a causative factor or incident that was present in service or otherwise was the result of the service-connected diabetes mellitus on a secondary basis. 

In light of the foregoing, the benefit-of-the-doubt doctrine is not applicable, and the claim must be denied.





ORDER

Service connection for a visual disorder is denied.



REMAND

In September 2010, the Board sought an opinion and rationale as to whether the diagnosed hypertension was caused or aggravated by the service-connected diabetes mellitus.

The record shows that an opinion was obtained in October 2010 and that the RO later obtained an addendum to the opinion in November 2011. The opinions were to the effect that the Veteran's hypertension was not caused or aggravated by the service-connected diabetes mellitus. 

The Board notes that the examiner did not provide a clear rationale to support the opinion. The examiner's notation that both disorders were initially diagnosed at the same time does not fully explain causation or explain aggravation particularly since there are several medical records that note the Veteran's diabetes mellitus was poorly controlled.

A remand by the Board confers on the claimant, as a matter of law, the right to compliance with the remand orders. Stegall v. West, 11 Vet. App. 268 (1998). 

Accordingly, this remaining matter is REMANDED to the RO for the following action:

1. The RO should take all indicated action in order to obtain copies of all VA records referable treatment rendered for hypertension that have not been associated with the record. If the search for such records has negative results, documentation to that effect should be included in the claims file. 

2. Then, the RO should schedule the Veteran for a VA examination to determine the nature and likely etiology of his claimed hypertension. 

The examiner should review the claims folder, including a copy of this REMAND, and acknowledge such review in the examination report. 

After examining the Veteran and reviewing the entire record, the examiner should provide an opinion as to whether it is at least as likely as not that the current hypertension was caused or aggravated by the service-connected diabetes mellitus.

The examiner must provide a complete rationale for all opinions expressed and refer to any pertinent records, if necessary. 

3. After completing the requested action, and undertaking any further development deemed necessary, the RO should readjudicate the claim remaining on appeal in light of all the evidence of record. If any benefit sought on appeal remains denied, a Supplemental Statement of the Case should be furnished to the Veteran and his representative and they should afforded a reasonable opportunity for response. 

Thereafter, if indicated, the case should be returned to the Board for the purpose of appellate disposition. 

The Veteran has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2011). 


______________________________________________
STEPHEN L. WILKINS
Veterans Law Judge,
Board of Veterans' Appeals


Department of Veterans Affairs